1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kazerouni Law Group, APC

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costs Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Kathleen Holt

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATHLEEN HOLT, Individually and on Behalf of All Others Similarly Situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**RESERVE LIFE ORGANICS, LLC, d/b/a RESERVEAGE ORGANICS, d/b/a RESERVEAGE, LLC, d/b/a RESERVEAGE ORGANICS, INC., d/b/a, RESERVEAGE, INC., d/b/a RESERVEAGE,**<br><br>    **Defendant.** | **Case No.:** **'13 CV 2206 JAH DHB**<br><br>C<small>LASS</small> A<small>CTION</small><br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND RESTITUTION FOR VIOLATIONS OF CALIFORNIA'S BUS. & PROF. CODE §§ 17200 ET SEQ.; BUS. & PROF. CODE §§ 17500 ET SEQ.; CALIFORNIA CIVIL CODE § 110660; NEGLIGENT MISREPRESENTATION AND INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

**INTRODUCTION**

1. This is a California statewide class action complaint brought by KATHLEEN HOLT ("Plaintiff"), individually and on behalf of all others similarly situated, to challenge the actions of RESERVE LIFE ORGANICS, LLC, d/b/a RESERVEAGE ORGANICS, d/b/a RESERVEAGE, LLC, d/b/a RESERVEAGE ORGANICS, INC., d/b/a, RESERVEAGE, INC., d/b/a RESERVEAGE ("Reserveage Organics" or "Defendant"), with regard to Defendant's false promotion of its Resveratrol product as, *inter alia*, primarily consisting of "Organic Resveratrol From French Red-Wine Grapes," and failure to disclose the significant presence of magnesium stearate. The nationwide advertising, promotion, marketing, packaging and selling of Resveratrol's resveratrol content constitutes: (a) a violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq., California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 et seq.; California Civil Code § 110660; and negligent and intentional misrepresentation.  This conduct caused Plaintiff and the putative class members damages, and requires restitution and injunctive relief to remedy and/or prevent further damages.

2. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

**NATURE OF ACTION**

3. The term "organic" is regularly used by manufacturers, such as Reserveage Organics, to describe a product that has been deemed and/or certified organic by the federal government (specifically, the United States Department of Agriculture), whereas the term "natural" has no such certification requirements. The term "organic" is used to convey the

Kazerouni Law Group, APC

CLASS ACTION COMPLAINT

Kazerouni Law Group, APC

message that the product is a healthier choice than competing products that contain processed ingredients, potential pesticides, and that the product is superior and even worth a premium price because of the benefit.

4.  At all times relevant, Reserveage Organics has made, and continues to make, affirmative misrepresentations and/or omissions regarding its Resveratrol product. Specifically, the Resveratrol product, which has been packaged, advertised, marketed, promoted and sold by Resvereage Organics to Plaintiff and other consumers similarly situated, was represented by Defendant to contain "organic" resveratrol as a substantial ingredient, from "Organics Resveratrol From French Red-Wine Grapes" and "Organic French Red Grape and Vine." In fact, Resveratrol contains little "organic" or grape based resveratrol (or much less than consumers reasonably expect based upon Defendant's representations as alleged herein) from the claimed French Red-Wine Grapes, a fact that Defendant knew and purposely failed to disclose (or adequately disclose) to consumers. The product, Resveratrol, consists of mostly natural, not organic, Japanese Knotweed, which is a much cheaper source of resveratrol than French Red-Wine Grapes.[1] To this day, Defendant has taken few, if meaningful steps to clear up consumers' misconceptions regarding the Resveratrol product, including Defendant's intentional omission regarding the presence of magnesium stearate.

---

[1] "Although we commonly think of resveratrol as coming from grape skins and red wine, many resveratrol supplements obtain their high doses of the powerful antioxidant from the Japanese knotweed plant. Native to parts of Asia including Japan, China and Korea, Japanese knotweed is successfully grown in North America and Europe as well. Providing a more concentrated source of resveratrol, Japanese knotweed is preferred over grape skins by many dietary supplement manufacturers. Unlike grapes, Japanese knotweed can be grown year round, allowing manufacturers to have a consistent source of resveratrol for their pills." http://www.resveratrolbenefits.com/japanese-knotweed.html, which was accessed on August 22, 2013.

---

**CLASS ACTION COMPLAINT**

5. As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other consumers similarly situated have purchased Resveratrol under the false impression that, by consuming the product they would be enjoying the healthful and nutritional benefits associated with a product which they reasonably believed, based upon Defendant's representations alleged herein, at least substantially contained organic resveratrol from French Red-Wine Grapes and did not contain magnesium stearate.[2]

6. Each consumer, including Plaintiff, was exposed to virtually the same material misrepresentations and/or omissions, which are prominently displayed on the product's packaging for Resveratrol, as well as on Defendant's website, prior to purchasing the product.

7. Additionally, Defendant completely omitted from its labeling and advertising the fact that Resveratrol contains a significant amount of

---

[2] "Because there have been very few studies conducted on resveratrol in humans, doctors still can't confirm any benefits, and they don't know what effects these supplements might have on people over the long term. So far, studies have not discovered any severe side effects, even when resveratrol is taken in large doses. However, resveratrol supplements might interact with blood thinners such as warfarin (Coumadin), and nonsteroidal anti-inflammatory medications such as aspirin and ibuprofen, increasing the risk for bleeding.  Like other supplements, resveratrol isn't regulated by the FDA, so it's difficult for consumers to know exactly what they're getting when they buy a bottle, or whether the product is actually effective. There also isn't any specific dosage recommendation, and dosages can vary from supplement to supplement. The dosages in most resveratrol supplements are typically far lower than the amounts that have been shown beneficial in research studies. Most supplements contain 250 to 500 milligrams of resveratrol. To get the equivalent dose used in some animal studies, people would have to consume 2 grams of resveratrol (2,000 milligrams) or more a day. The bottom line: Until more high-quality research is available, experts say they can't recommend resveratrol supplements for antiaging or disease prevention" http://www.webmd.com/heart-disease/resveratrol-supplements, accessed August 22, 2013.

Kazerouni Law Group, APC

magnesium stearate,[3] which is or may be harmful to consumers by, among other things, negatively impacting the body's immune system.

8.  As a result of Defendant's representations and/or omissions regarding Resveratrol, Plaintiff and other consumers similarly situated overpaid for the product because the value of the product was diminished at the time it was sold to consumers. Had Plaintiff and other consumers similarly situated been made aware that Resveratrol contained little organic or grape based resveratrol (or much less than consumers reasonably expect based upon Defendant's representations alleged herein) from French Red-Wine Grapes, in the presence of magnesium stearate, they would not have purchased Resveratrol, would have paid less for it, or purchased a different resveratrol supplement.

9.  As a result of Defendant's false and misleading statements and failures to disclose (or adequately disclose), as well as Defendant's other conduct described herein, Plaintiff and other consumers similarly situated purchased several thousands of units of Resveratrol and have suffered, and continue to suffer, injury in fact.

10. Defendant's conduct as alleged herein violates several California State laws, as alleged more fully herein.

11. This action seeks, among other things, equitable and injunctive relief, restitution of all amounts unlawfully retained by Defendant, and

---

[3] "Magnesium stearate is a … potentially harmful additive found in many supplements." http://articles.mercola.com/sites/articles/archive/2012/06/23/whole-food-supplement-dangers.aspx, accessed August 22, 2013. Magnesium stearate is formed by adding a magnesium ion to stearic acid and is a compound that has lubricating properties, which is why it is often used in the making of supplements, as it allows the machinery to run faster and smoother, and prevents the pills or capsules from sticking to each other. Research has shown that stearic acid suppresses T cells—your natural killer cells—which are a key component of your immune system. *Id*.

Kazerouni Law Group, APC

Kazerouni Law Group, APC

disgorgement of all ill-gotten profits from Defendant's wrongdoing alleged herein.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 and is a class action in which the named Plaintiff is a citizen of a State different from Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant does business in the State of California, is incorporated in the State of Delaware, has sufficient minimum contacts with this state, and otherwise purposely avails itself of the markets in this state through the promotion, sale, and marketing of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that Defendant resides within the judicial district and many of the acts and transactions giving rise to this action occurred in this district because Defendant:

    (a)   is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    (b)   does substantial business within this district;

    (c)   is subject to personal jurisdiction in this district; and

    (d)   the harm to Plaintiff occurred within this district.

## PARTIES

15. Plaintiff is, and at all relevant times was, a natural person residing in the State of California, County of San Diego.

16. Plaintiff is informed and believes, and thereon alleges, that Defendant's

CLASS ACTION COMPLAINT

principal place of business is 5745 SW 75th Street, Suite 337, Gainesville, Florida 32608, and is incorporated under the laws of the State of Delaware, and does business within the State of California and this district.

## GENERAL ALLEGATIONS

17.  Reserveage Organics, is a leading producer in the United States of health supplements branded as organic. Defendant sells Resveratrol in varying quantities, including 100 mg, 250 mg and 500 mg, throughout the United States, including in California.

18.  It has become recently well known that resveratrol may be a powerful antioxidant, and is found in high concentrations in certain types of grapes, such s French Red-Wine Grapes. For years, scientists have believed the health benefits that come from consuming red wine, which may be helpful in maintaining health and preventing disease by neutralizing free radicals,[4] thus helping to prevent cell and tissue damage.

19.  During the "Class Period" as defined in paragraph 127, Plaintiff was exposed to and saw Defendant's advertising, marketing, promotional and packaging claims, purchased Resveratrol in reliance on these claims, and suffered injury in fact and lost money as a result of Defendant's unfair, misleading and unlawful conduct described herein.

20.  In making Plaintiff's decision to purchase Resveratrol, Plaintiff relied upon, *inter alia*, the labeling, packaging, advertising and/or other promotional materials prepared and approved by Defendant and its agents and disseminated through its packaging, advertising, marketing, promotion,

---

[4] Free radicals are atoms or molecules in a person's body with an unpaired electron, making them highly unstable. Normally, electrons are found in pairs, and therefore, the free radicals collide with other molecules in an attempt to steal an electron, which in turn, may start a chain reaction, causing damage to cell membranes and DNA through a process known as oxidative stress. In fact, free radicals are able to aggressively destroy healthy cells and have been linked to serious health threats, such as cancer and heart disease.

Kazerouni Law Group, APC

Kazerouni Law Group, APC

and/or through local and national advertising media, including Defendant's internet websites, media and in-store advertisement, containing the misrepresentations and/or omissions alleged herein.

21.  With the alleged nutritional and health benefits of resveratrol becoming more widely known, consumers demand for resveratrol has increased significantly over the past few years.  Defendant hoped to profit from such research and discovery by selling its products, such as Resveratrol, and differentiating from other resveratrol products by claiming it substantially contained organic and grape based resveratrol. In fact, according to Defendant's website, "**Reserveage™ Organics is committed to promoting and supporting an organic way of life.** Organic methods are time-tested and proven to be the best way to care for the environment and yourself; a healthier Earth means a healthier you. **Organic foods, supplements and products provide optimum nourishment, naturally fostering good health, vibrancy and an overall sense of well-being.** Live longer, live better, and look radiantly youthful!" *See* http://www.reserveage.com/our-mission-amp-philosophy-pg-157.html (Emphasis added.)

22.  The word "organic" is used on Resveratrol packaging, as well as the brand's website and social media presence, which is dominated by images of fresh grapes from the vine. Indeed, one of the names the company goes by is "Resvereage Organics."

23.  A Google search of "organic resveratrol" on August 22, 2013 resulted in "www.reserveage.com" as the first listing.

24.  Defendant seeks to capitalize on consumers' preference for organics foods and health supplements with the association between such foods and supplements and a wholesome and healthy way of life. Defendant is aware that consumers are willing to pay more for organic supplements because of

**CLASS ACTION COMPLAINT**

this association, as well as the perceived higher quality, health and safety benefits with products labeled as "organic."

25. The scope of Defendant's advertising of Resveratrol is wide-spread. Resveratrol is marketed in California and throughout the nation. Defendant's own website markets "**Resveratrol In The News**." *See* http://www.reserveage.com/home.php, accessed March 18, 2013 (Emphasis added.) Defendant's website also has a link to a "60 Minutes" special discussing the general health benefits of resveratrol from grapes. Defendant has advertised it Resveratrol product during the Class Period

26. On the front of the packaging, Resvereage Organics advertises the Resveratrol product (in the 250 mg bottle) as follows on page nine of this Complaint:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Kazerouni Law Group, APC



26   Thus, the front packaging states that it is "The Original Red Wine

27   Antioxidant," "The World's Finest Resveratrol 250 mg," and "from the

28   heart of France," all surrounded by images of red wine grapes and grape

**CLASS ACTION COMPLAINT**

leaves, rather than depicting Japanese Knotweed, the main ingredient providing resveratrol which may not be from France at all.

27. On the Supplement Facts panel on the back of the packaging and the product, Resveratrol purports to combine two of nature's most potent sources of resveratrol, French Red-Wine Grapes and Japanese Knotweed, into a single supplement in the form of a consumable capsule. However, the main ingredient in Resveratrol, and the main ingredient providing substantial resveratrol, is non-organic Japanese Knotweed, not French Red-Wine Grapes, which is a much cheaper and more plentiful source of natural, as opposed to organic, grape based resveratrol. In addition, despite Defendant's claim of "From the Heart of France", Plaintiff believes that Defendant's Japanese Knotweed is sourced from China.

28. Even though Resveratrol contains little organic resveratrol (or much less than consumers reasonable expect based upon Defendant's representations alleged herein) from French Red-Wine Grapes, Defendant made a tactical marketing and/or advertising decision to create a deceptive and misleading label for Resveratrol, which label fails to disclose how much resveratrol, if any, is from organic grapes in Defendant's "Pro-longevity Factors Proprietary Blend," and misleadingly indicates that Resveratrol, which is advertised as "Made with Certified Organic Ingredients" contains 250 mg of "organic" resveratrol from French red wine grapes.[5] Furthermore,

---

[5] On information and belief, Plaintiff alleges that prior to March of 2013, but during the Class Period, the Supplement Facts Panel for Resveratrol included the description "Pro-longevity Resveratrol Blend," instead of "Pro-Longevity Factors Proprietary Blend," which was a material misrepresentation due to the presence of the word "Resveratrol," which misleadingly states and implies that the blend consists of various sources of resveratrol, when in fact, the blend contains ingredients that have virtually no or zero resveratrol content. Removing the word "Resveratrol' from "Pro-longevity Resveratrol Blend" more accurately informs consumers that while the blend contains resveratrol, some of the ingredients that are blended with the resveratrol may not contain resveratrol themselves.

Kazerouni Law Group, APC

Kazerouni Law Group, APC

Defendant purposely de-emphasizes the words "Made with" and "Ingredients" in the front panel marketing feature "Made with Certified Organic Ingredients" to mislead the consumer into only reading the "Certified Organic" portion and thus applying the same to the *entire* product. Plaintiff believes that Resveratrol does not contain 70 percent organically produced products as required by 7 C.F.R. 201.305(b) which states: (c) *Products sold, labeled, or represented as "made with organic (specified ingredients or food group(s))."* Multi-ingredient agricultural product sold, labeled, or represented as "made with organic (specified ingredients or food group(s))" must contain (by weight or fluid volume, excluding water and salt) at least 70 percent organically produced ingredients which are produced and handled pursuant to requirements in subpart C of this part. No ingredients may be produced using prohibited practices specified in paragraphs (f)(1), (2), and (3) of § 205.301. Nonorganic ingredients may be produced without regard to paragraphs (f)(4), (5), (6), and (7) of § 205.301. If labeled as containing organically produced ingredients or food groups, such product must be labeled pursuant to § 205.304.

29. Additionally, despite the fact that Resveratrol contains little "organic" resveratrol (or much less than consumers reasonably expect based upon Defendant's representations alleged herein) from French Red-Wine Grapes, Defendant decided to associate its product with organic red-wine grapes from what Defendant claims to be the purest vineyard in France, and to prominently depict fresh grapes from the vine on the front of its packaging, among other misleading elements found both on the packaging and on Defendant's website.

30. The Supplement Facts label on the product displays the following on page twelve of this Complaint:

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kazerouni Law Group, APC

## Supplement Facts

Serving Size: 1 Veggie Capsule    Servings per Container: 120

| Amount per serving | % Daily Value |
|---|---|
| Pro-Longevity Factors Proprietary Blend    200 mg * | |
| Organic French Red Grape & Vine [*Vitis vinifera* (Full Spectrum Polyphenol Profile)], Muscadine USDA Certified Organic Red Grape & Seed [*Vitis rotundifolia* (Grape Pomace)] | |
| Resveratrol                              500 mg * | |
| Organic French Red Grape & Vine (*Vitis vinifera*) and wild natural Japanese Knotweed (*Polygonum cuspidatum*) standardized to contain a minimum of 50% (**250 mg**) of the *trans*-Resveratrol isomer. | |
| Quercetin (as quercetin dihydrate)              100 mg * | |

* Daily Value not established

**Other ingredients:** Vegetarian capsule (vegetable cellulose), rice bran, silica.

**Directions:** As a dietary supplement, **take 1 capsule daily.** Store at controlled room temperature between 50°F-86°F to maintain freshness.

**Does not contain:** Corn, soy, wheat, lactose, citrus, milk, egg or fish products, sugar, salt, starch, artificial coloring, flavoring or preservatives. Components in this product are derived from natural sources. Allergen free of yeast. **Gluten free.**

**WARNING: KEEP OUT OF REACH OF CHILDREN. DO NOT USE IF SEAL IS BROKEN OR MISSING.**

Cruelty free. No animal testing.

As with any dietary supplement, consult your health care practitioner before using this product, especially if you are pregnant, nursing, have existing medical conditions or are taking prescription medications.

Printed with vegetable-based inks on 100% recyclable material.

31. Resvereage Organics could have associated the product with sources of resveratrol other than French Red-Wine Grapes, such as the Japanese Knotweed, which is the primary ingredient providing resveratrol in Resveratrol.

**CLASS ACTION COMPLAINT**

32. Reserveage Organic's decision to associate its product with French organic grapes demonstrates Defendant's intention to focus consumers on the organic grapes in the product, rather than the cheaper presumably Chinese sourced Japanese Knotweed.

33. The effect of Defendant's label is to communicate that the product is composed primarily of organic red wine grapes without the presence of magnesium stearate, since there are supposed to be great health benefits associated with red wine. As a result, purchasers are likely mislead and deceived by the product's label and other forms of marketing and advertising, and reasonably expect that Resveratrol actually consist primarily of organic French Red-Wine Grapes, when, in fact, this is not the case.

34. Plaintiff's claim that Resveratrol's product label and associated advertising is misleading and deceptive does not seek to challenge the product's formal name and labeling in areas for which the Food and Drug Administration ("FDA") has promulgated regulations implementing the Federal Food and Drug and Cosmetic Act ("FFDCA"). Plaintiff's claim is, instead, predicated on the fact that the labeling and associated advertising is misleading and deceptive even if in compliance with the minimum requirements set forth by the FDA, as the FDA regulations set the floor or minimum requirements. Indeed, compliance with the minimum requirements is necessary, but it is not sufficient to determine whether a product's label is false and misleading, and simply does not provide a shield from liability. *See e.g.*, *Wyeth v. Levine*, 129 S. Ct 1187, 12012 (2009).

35. Plaintiff's state law claims are aimed at the features of the labeling of Resveratrol and associated advertising that are voluntary, and not required by the FDA regulations, which Defendant selected in order to maximize the label's deceptive impact upon Plaintiff and other consumer's similarly

Kazerouni Law Group, APC

situated. Resvereage Organics made the decision to so label its product because of its marketing strategy. FDA regulations do not require that Defendant place a picture of grapes on the front of its packaging for the Resveratrol product. Indeed, Defendant's strategy misleads consumers to buy Resveratrol as a result of this deceptive message; and Defendant has been successful thus far.

36. In addition to the deceptive label, Defendant deceptively describes Resveratrol on its website. Defendant's interactive website is accessible to the general public. Reserveage Organics' website also conveys in a similar deceptive manner the product Resveratrol. As explained below, Defendant's website conveys the marketing and/or advertising message in a calculated way to lead consumers to believe that the product primary contained "organic" resveratrol from French Red-Wine Grapes, when in fact it does not.

37. Plaintiff's claim that Resveratrol's website is misleading and deceptive is based on specific marketing and/or advertising content, which Defendant displays on its website, distinct from the misleading aspects of the product label. Specifically, the misleading and deceptive website content was not required by the FDA labeling requirements. Instead, Defendant voluntarily selected each of the features on the website in order to maximize its impact on consumers seeking to obtain information concerning Resveratrol. However, Defendant's website does not adequately inform consumers that the primacy ingredient in Resveratrol is Japanese Knotweed, not French Red-Wine Grapes. Plaintiff claims that Defendant's website violates the laws alleged herein, not that the website violates FDA regulations.

38. On information and belief, Plaintiff alleges that sometime prior to March of 2013, but during the Class Period, when a consumer would visit the internet web page for Defendant at http://www.reserveage.com/home.php,

Kazerouni Law Group, APC

Kazerouni Law Group, APC

Defendant displayed in the title bar (the header at the top of the browser) the words "**Organic Resveratrol from French Red-Wine Grapes**," thus leading a reasonable consumer to believe that s/he, for the high price the consumer is paying for the Resveratrol product, the consumer is receiving a meaningful amount of "organic" resveratrol from "French Red-Wine Grapes, not resveratrol from other sources, such as Japanese knotweed. (Emphasis added.)

39.  As of August 22, 2013, Defendant displays at the top of its website the words "Resverveage organics – from the rich, organic soil in France the fruit of the vineyard your source for helping preserving youth,"[6] which still leads a reasonable consumer to believe that s/he, for the high price the consumer is paying for the Resveratrol product, the consumer is receiving a meaningful amount of organic "Resveratrol From French Red-Wine Grapes" (as displayed in the title bar of Defendant's website), not resveratrol from other sources, such as Japanese knotweed which is most likely not sourced from the "rich, organic soil in France."

40.  Also, while the product's front label states "**Contains *trans*-Resveratrol proven to trigger the SIRTI 'longevity gene'**," Defendant's own website demonstrates Defendant's overstatement regarding the "proven" nature of this claim, and indicates that research has not in fact "proven" what Defendant claims to be true. (Emphasis added.)

41.  On the web page for Defendant at http://www.reserveage.com/resveratrol-500-mg-60ct-pr-9.html, Defendant shows a picture of the Resveratrol product. Under the "Description" it states in relevant part: "**In studies, concentrated Resveratrol has shown promise in its ability to stimulate**

---

[6] On information and belief, Plaintiff alleges that prior to March of 2013, but during the Class Period, the Defendant displayed at the top of its website the words "Resverveage organics – from the rich, organic soil in France the purest fruit of the vineyard your source for preserving youth."

**the SIRT1 Longevity Gene.**" (Emphasis added.) Thus, according to Defendant, research has merely shown "promise" in stimulating the SIRTI Longevity Gene, not that research has "proven" this claim, which is an additional material misrepresentation regarding Reserveage Organic's product Resveratrol.

42. On the same page, Defendant displays the Supplement Facts panel regarding the Resveratrol product. This web page claims the amount in milligrams for certain ingredients.

43. With regard to the "Pro-Longevity Factor Proprietary Blend" for the 250 mg product (120 capsules), Defendant claims "200 mg." This claim is misleading because Defendant is claiming what the industry standard calls a "Proprietary Blend" name (i.e. Pro-Longevity Resveratrol Blend) without disclosing to the consumer how much of the 50 mg is actually resveratrol, or that all of the ingredients in the blend do not all contain significant amounts of resveratrol.

44. The Supplement Facts panel for the 200 mg quantity, which is also found on Defendant's website, indicates "500 mg" next to the word "Resveratrol" on the same line under the Supplement Facts label. This is misleading because on its face, this capsule is providing the consumer 250 mg of resveratrol without indicating how much is actually organic resveratrol from French Red-Wine Grapes.

45. The Supplement Facts label also conflicts with the representations of "250 mg" of "resveratrol "The Original Red Wine Antioxidant" "from the heart of France" on the front of the product, since the Supplement Facts panel indicates that it is actually "wild natural Japanese Knotweed" that is "standardized to contain a minimum of 50% (250 mg) of Trans-resveratrol isomer", Defendant does not explicitly state that that the Japanese Knotweed is sourced from France and Plaintiff believes it is not sourced

Kazerouni Law Group, APC

from France. Thus, despite the primary ingredient being Japanese Knotweed, Defendant claims to provide organic "Resveratrol From French Red-Wine Grapes" (on the website), and lists "Organic French Red Grape And Vine" (on the packaging) as the first (and presumably main source) source of resveratrol, as well as other false and/or misleading representations concerning the Resveratrol product.

46. Since it is wild "natural" Japanese Knotweed that is standardize to contain a minimum of 250 mg of resveratrol, the Resveratrol product cannot contain 250 mg of "organic" resveratrol, which means the consuming public, including Plaintiff, are not receiving the meaningful amount of organic resveratrol that they reasonably expected for the high price of $71.99 on Defendant's website (as of August 22, 2013).

47. The Supplement Facts panel for the 500 mg quantity (60 capsules), which is also found on Defendant's website, indicates "900 mg" next to the word "Resveratrol" on the same line under the Supplement Facts panel. This is misleading because on its face, this capsule is providing the consumer 500 mg of resveratrol without indicating how much, if any, is actually organic resveratrol from French Red-Wine Grapes.

48. On Defendant's website, at http://www.reserveage.com/resveratrol-500-mg-60ct-pr-9.html, with regard to the "Pro-Longevity **Resveratrol** Blend" (emphasis added) for the 500 mg product (60 capsules), Defendant claims "50 mg." This claim is misleading because Defendant is claiming what the industry standard calls a "Proprietary Blend" name (i.e. Pro-Longevity Resveratrol Blend) without disclosing to the consumer how much of the 50 mg is actually resveratrol, or that all of the ingredients in the blend do not all contain significant amounts of resveratrol.

49. Grapes are generally known in the industry to contain resveratrol, but without a huge amount of grapes (so much so that the product cannot fit

into a standardized consumable capsule), it is not commercially viable to comprise a consumable capsule containing 500 mg of resveratrol from such grapes (or even 250 mg), such as the French Red-Wine Grapes advertised by Defendant.

50. According to the Linus Pauling Institute Micronutrient Research for Optimum Health, located at http://lpi.oregonstate.edu/infocenter/phytochemicals/resveratrol/, accessed on August 22, 2013, "Red wine extracts and red grape extracts containing resveratrol and other polyphenols are also available in the U.S. as dietary supplements. Resveratrol supplements may contain anywhere from **10-50 mg of resveratrol**, but the effective doses for chronic disease prevention in humans are not known." (Emphasis added.)

51. Plaintiff and consumers similarly situated are simply not informed by Defendant exactly how much "organic" resveratrol from "French Red-Wine Grapes" they are receiving in each capsule of Resveratrol, even though they are paying a premium for the product due to its advertised, marketing, and otherwise promoted health benefits.

52. The web page for Defendant http://www.reserveage.com/vineyards-pg-149.html, states, "**Reserveage Organics red wine grapes, the source of our superior Resveratrol, are produced on a seventh-generation family-held organic/biodynamic vineyard in the heart of southern France.**" (Emphasis added.) The same page also states, "Resveratrol, a highly sensitive grape by-product, begins a rapid deterioration when exposed to light and oxygen. Armed with this knowledge, we have our transportation ready and waiting. The organic grape pomace is carefully placed into our refrigerated trucks and taken into a dark, oxygen-free environment. As a result, the harmful and destructive effects of oxidation and light are radically reduced. Reserveage Organics, producers of the line

of Resveratrol supplements made with organic French grapes organically grown Muscadine grapes and polygonum cuspidatum, to ensure that our supplements provide you with the World's Finest Resveratrol."[7]

53. According to Defendant's blog, "Reserveage Organics™ Resveratrol products support your health and vitality, helping you to support your health. **These supplements are made from red-wine grapes from our seventh generation French organic, biodynamic vineyard** and enriched with wild crafted polygonum cuspidatum." (Emphasis added.) *See* http://reserveage.com/blog/?tag=organic, accessed August 22, 2013.

54. On information and belief, Plaintiff alleges that prior to March of 2013, but during the Class Period, Defendant's website claimed on the web page, http://www.reserveage.com/home.php, **from the RICH, ORGANIC SOIL in France, the purest FRUIT of the vineyard, your source for PRESERVING YOUTH.**" (Emphasis added.)

55. Defendant's website states, under the section "Why Reserveage?," "Exceptional Purity Levels: **Reserveage's raw material is harvested from the original and organic source of red grapes**, and is tested by independent laboratories. Purity is a significant concern among Resveratrol consumers. We strive to manufacture products made with only the purest, natural and organic materials available." (Emphasis added.) *See* http://www.reserveage.com/why-reserveage-pg-159.html, accessed August 22, 2013.

56. This web page further states, "Exclusive and Exceptional Raw Material: Reserveage starts with the **best organic raw materials from our own**

---

[7] On information and belief, Plaintiff alleges that prior to March of 2013, but during the Class period, the language displayed on Defendant's website stated, "**Reserveage Organics, producers of the only line of Resveratrol supplements made with organic French grapes, to ensure that our supplements provide you with the pure and most potent source of Resveratrol.**" (Emphasis added.)

Kazerouni Law Group, APC

**French vineyard** and all natural Polygonum cuspidatum." (Emphasis added.)

57. Furthermore, Defendant's professional Linkedin page, located at http://www.linkedin.com/company/reserveage-organics, accessed on August 22, 2013, states, "We are dedicated to **Organic Ingredients**, allowing us to provide only the freshest, most potent and most bioactive Resveratrol to its customers." (Emphasis added.)

58. In addition, Plaintiff is informed and believes, and thereupon alleges, that Defendant has also engaged in other forms of advertising and/or marketing of Resveratrol, including print advertisements, point-of-purchase displays, and national in-store programs. Through the uniform deceptive and misleading advertising and marketing campaigns, Reserveage Organics leads consumers to believe that the primary ingredient in the product is resveratrol from French Red-Wine Grapes, and that there is a significant amount of such organic resveratrol in each capsule.

59. As a result of this campaign, the average consumer, unaware that the product actually contains little organic resveratrol (or much less than consumers reasonably expect) from French Red-Wine Grapes, has purchased the product believing the active nutrient, resveratrol, in the product is derived primarily from French Red-Wine Grapes. The primary ingredient is actually Japanese Knotweed, which is much cheaper than French Red-Wine Grapes.

60. Moreover, consumers' confusion is reasonable, given that red wine is typically thought of as an excellent source of resveratrol, and a product advertised and/or promoted as made from organic grapes should primarily contain organic grapes, not Japanese Knotweed. Defendant could have easily placed a picture of Japanese Knotweed on its product instead of grapes, but Defendant made a tactical marketing decision to do otherwise.

Kazerouni Law Group, APC

**CLASS ACTION COMPLAINT**

61. Accordingly, Defendant's representations regarding organic resveratrol are false, misleading and/or fails to disclose material facts. Defendant knew or should have known and/or was reckless in not knowing and adequately disclosing that Resveratrol contained little organic resveratrol (or much less than consumers reasonably expect) from French Red-Wine Grapes. Defendant knew or should have known that its representations concerning Resveratrol were likely to deceive consumers into believing that they were purchasing primarily organic resveratrol from French Red-Wine Grapes.

62. Further, reasonable consumers do not expect to be ingesting magnesium stearate, especially not a significant quantity of magnesium stearate, when consuming the Resveratrol product, since Defendant completely failed to include on the product's label and in Defendant's advertising that Resveratrol contains magnesium stearate, which is or may be harmful and certainly undesirable to consumers.

63. As a result of Defendant's representations and/or omissions, Plaintiff overpaid for Resveratrol purchased by Plaintiff because the value of the product was diminished at the time of the sale. Had Plaintiff been aware that Resveratrol included little organic resveratrol (or much less than consumers reasonably expect) from French Red-Wine Grapes, included magnesium stearate, was not "from the heart of France" and contained less than 70 percent organic ingredients overall, Plaintiff would not have purchased it, would have paid less for it, or would have purchased a different resveratrol supplement. For all the reasons stated herein, Plaintiff suffered injury in fact and has lost monies as a result of Defendant's actions.

64. Plaintiff is a generally health conscientious person who often shops at health foods stores and supplement shops. Purity of health supplements and accuracy of a product's labeling is important to Plaintiff.

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC

65. Approximately two days prior to purchasing Resveratrol, Plaintiff visited the website for Reserveage Organics, where Defendant advertised its Resveratrol product.

66. Health conscientious people, like Plaintiff, typically rely on a company's representations, including representations found on a company's website, when purchasing that company's products, especially representations that a product is, or is mostly, "organic," such as the Resveratrol product that is labeled "Certified Organic," which is sold by Defendant "Resvereage Organics."

67. On June 28, 2013, Plaintiff purchased a bottle of Resveratrol 250 mg (120 capsules) from the Vitamin Shoppe in La Mesa, California, because Plaintiff had been exposed to representations by Defendant, including those on Defendant's website, that it was organic Resveratrol from French Red-Wine Grapes and similar representations from Defendant.

68. Plaintiff paid $59.99 pre-tax for the Resveratrol product.

69. Plaintiff was seeking a dietary health supplements that was high in organic resveratrol because Plaintiff believed that such substance would likely result in substantial health benefits, such as longevity of life and other health benefits. Plaintiff trusted the "Resvereage Organics" brand name because of Defendant's claims and wide-spread marketing of the high quality and organic nature of its products and Plaintiff's interest in such advertised health benefits. Plaintiff reasonably relied upon the representations on Resveratrol packaging and various forms of advertisement, such as by internet, rather than performing in-depth independent research into the truthfulness or accuracy of Defendant's representations.

70. Plaintiff consumed the Resveratrol product subsequent to purchasing it.

71. Sometime after purchasing and consuming Resveratrol, Plaintiff learned

Kazerouni Law Group, APC

Kazerouni Law Group, APC

that it was not likely that Resveratrol contained "250 mg" of "organic" resveratrol from "French Red-Wine Grapes."

72. Sometime after purchasing and consuming Resveratrol, Plaintiff also learned that Resveratrol contains magnesium stearate in a detectable amount.

73. Defendant's many representations concerning the Resveratrol product led Plaintiff to believe that Resveratrol contained "organic" resveratrol from the "French Red-Wine Grapes" that were supposed to be a very pure source of resveratrol, according to Defendant's website, as explained in detail above. Additionally, many representations or omissions concerning the Resveratrol product led Plaintiff to believe that Resveratrol did not contain magnesium stearate, especially not magnesium stearate in a significant amount that should have been declared in Resveratrol's Supplement Facts. Plaintiff was shocked to learn that it was Japanese Knotweed that was standardized to contain 250 mg of resveratrol, which means that Resveratrol could not possibly contain 500 mg of resveratrol from "organic" French Red-Wine Grapes, and that Resveratrol contained magnesium stearate, which is an undisclosed ingredient in Resveratrol.

74. According to the Supplement Facts panel, there is "500 mg" of "resveratrol" in the Resveratrol product, with the "500 mg" listed to the right of the word "Resveratrol" on the same line. Resveratrol is therefore a deceptively packaged and advertised product designed to induce the purchase of Resveratrol as containing resveratrol from "Organic" "French Red-Wine Grape," without the presence of magnesium stearate, even though the product does not in fact contain 500 mg or even 250 mg of "organic" resveratrol, and despite the front of the packaging which represents the presence of 250 mg of resveratrol from red wine grapes from France per capsule in this "organic" product.

**I.  FIRST CAUSE OF ACTION FOR VIOLATION OF
CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.
(California's Unfair Competition Law)**

75.  Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if fully stated herein.

76.  "Unfair competition" is defined in Business and Professions Code Section § 17200 as encompassing any one of the five types of business "wrongs," three of which are at issue here: (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; and (3) a "fraudulent" business act or practice. The definitions in § 17200 are disjunctive, meaning that each of these five "wrongs" (Plaintiff alleges three of them here) operates independently from the others.

77.  Plaintiff and Defendant are both "person[s]" as defined by California Business & Professions Code § 17201.  Section 17204 authorizes a private right of action on both an individual and representative basis.

**a.  "Unlawful" Prong**

78.  Because Defendant has violated California's False Advertising Law, Business & Professions Code §§ 17500 et seq., as well as California's Health and Safety Code § 110660, Defendant has violated California's Unfair Competition Law, Business & Professions Code §§ 17200 et seq., which provides a cause of action for an "unlawful" business act or practice perpetrated on members of the California public.

79.  State law claims based on a food products misleading and deceptive label are expressly permitted when they impose legal obligations identical to the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing FDA regulations, including FDA regulations concerning naming and labeling.  *See e.g., In re Farm Raised Salmon Cases*, 22 Cal. 4th 1077, 1094-95 (2008).  The Sherman law expressly incorporates into California law all of the food labeling regulations adopted pursuant to the FFDCA.

Plaintiff's § 17200 claim that the label of the Resveratrol product violates California Health & Safety Code § 110660 imposes legal obligations identical to 21 U.S.C. § 343(a) of the FFDCA. Since § 110660 and poses the identical legal obligation that "any food is misbranded if its labeling is false or misleading in any particular," point of section 17200 claim, which is based in part on § 110660, is expressly permitted and not preempted by the FFDCA. Further, § 343(a) of the FFDCA is not subject to express preemption provision set forth in 21 U.S.C. § 343-1 of the FFDCA.

80. Section 110660 states, "any food is misbranded if its labeling is false or misleading in any particular." Section 110660 is part of California's Sherman Food, Drug and Cosmetic law, California Health & Safety Code § 109875, et seq. (the "Sherman law"). Defendant has violated § 110660 because the product label misleads and deceives consumers into believing that the primary ingredient in Resveratrol is "organic" resveratrol from French Red-Wine Grapes, when in fact, the product contains little "organic" resveratrol (or much less than consumers reasonably expect based upon Defendant's representations alleged herein) from French Red-Wine Grapes, and does not contain 250 mg of "organic" resveratrol, and does not indicate the exact amount of "organic" resveratrol. The primary ingredient is actually Japanese Knotweed. The product label misleads and deceives consumers into believing that Resveratrol does not contain magnesium stearate when it in fact does contain magnesium stearate is significant quantities.

81. There were reasonably available alternatives to further Defendant's legitimate business interest, other than the conduct described herein.

82. Plaintiff and the putative class reserve the right to allege other violations of law, which constitute other unlawful business practices or acts, as such conduct is ongoing and continues to this date.

Kazerouni Law Group, APC

### b. "Unfair" Prong

83. Defendant's actions and representations constitute an "unfair" business act or practice under § 17200, in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, it is an unfair business act or practice for Defendant to knowingly and negligently represent to the consuming public, including Plaintiff, that Resveratrol is primarily composed of "Organic Resveratrol From French Red-Wine Grapes" when it in fact is primarily composed of less expensive sources of resveratrol, such as Japanese Knotweed. Defendant's business practices, and each of them, are "unfair" because they offend established public policy and/or are in moral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Resveratrol has qualities and benefits, including quantities of "organic" resveratrol that it does not have. The product label misleads and deceives consumers into believing that Resveratrol does not contain magnesium stearate when it in fact does contain magnesium stearate in significant quantities.

84. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant has committed acts of unfair competition as defined by Business & Professions Code §§ 17200 et seq., by engaging in the false advertising and promotion of Resveratrol as, *inter alia*, organic "Resveratrol From French Red-Wine Grapes," "Pro-longevity Factors Proprietary Blend 200 mg"[8] and "Resveratrol 500 mg" as described above. Defendant also failed to disclose the presence of

---

[8] Defendant's website states "Pro-Longevity **Resveratrol** Blend" (emphasis added) for Defendant's 500 mg bottle containing 60 capsule. *See* http://www.reserveage.com/resveratrol-500-mg-60ct-pr-9.html, accessed on August 22, 2013.

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC

1   magnesium stearate.

2   85.   Plaintiff and other members of the class could not reasonably have avoided

3   the injury suffered by each of them. Plaintiff reserves the right to allege

4   further conduct that constitutes other unfair business acts or practices.  Such

5   conduct is ongoing and continues to this date.

6   86.   Defendant could have and should have furthered its legitimate business

7   interests by expressly indicating on its packaging and website the exact

8   amount of "organic" resveratrol in Resveratrol. Further, it is not

9   unreasonably difficult for Defendant to indicate the exact amount of

10  "organic" resveratrol in its product and to disclose the presence of

11  magnesium stearate.[9]

12                    c.   "Fraudulent" Prong

13  87.   Defendant's claims and misleading statements were false, misleading

14  and/or likely to deceive the consuming public within the meaning of §

15  17200.  Without limitation, it is a fraudulent act or business act or practice

16  for Defendant to knowingly or negligently represent to Plaintiffs, whether

17  by conduct, orally or in writing by:

18        (a)   intentionally and misleadingly designing the product's front label

19              by   displaying   the   product's   name   "Resveratrol"   from

20              "Reserveage organics" along with prominently depicting red vine

21              grapes and red vine grape leaves that occupy virtually the entirety

22              of the picture part of the front label, with the claim "from the

23              heart of France," "The Original Red Wine Antioxidant," while

24              Resveratrol predominately contains Japanese Knotweed (or

25              contains   much   less   organic   resveratrol   than   consumers

26

27  [9] Other producer/seller of resveratrol supplements disclose the presence of

28  magnesium stearate, such as Vitamin Shoppe's "Reservie Trans Resveratrol"
    product.

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC

reasonably expect based upon Resvereage Organic's representations alleged herein concerning Resveratrol);

(b) intentionally and misleadingly designing the product's Supplement Facts panel to state "Pro-longevity Factors Proprietary Blend" on the same line as "200 mg" without indicating how much of the blend is actually resveratrol and/or organic resveratrol;

(c) intentionally and misleadingly designing the product's Supplement Facts panel to state "Resveratrol" on the same line as "500 mg," without specifying exactly how much "organic" resveratrol is found in each capsule; and

(d) intentionally creating Defendant's website to mislead and deceive consumers into believing that Resveratrol does not contain magnesium stearate when it in fact does contain magnesium stearate; and

(e) intentionally creating Defendant's website to mislead and deceive consumers into believing that Resveratrol primarily contains "Organic Resveratrol From French Red-Wine Grapes," without adequately identifying that the primary ingredient is actually Japanese knotweed, which is a less expensive source of resveratrol, while frequently and predominantly associating Resveratrol with French Red-Wine Grapes, and without any depiction of Japanese Knotweed.

88. Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

89. The fraudulent, unlawful and unfair business practices and false and misleading advertising of Defendant, as described above, presents a

---

**CLASS ACTION COMPLAINT**

continuing threat to consumers in that they will continue to be misled into purchasing Resveratrol on false premises.

90. As a direct and proximate result of the aforementioned acts and representations of Defendant, Defendant received and continues to hold monies rightfully belonging to Plaintiff and other similarly situated consumers who were led to purchase, purchase more of, or pay more for, the Resveratrol product, due to the unlawful acts of Defendant.

91. Thus, Defendant caused Plaintiff and other members of the Class to purchase Resveratrol on false premises during the Class Period.

92. Defendant has engaged in unlawful, unfair and fraudulent business acts or practices, entitling Plaintiff to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Pursuant to Business & Professions Code § 17203, as result of each and every violation of the UCL, which are continuing, Plaintiff is entitled to restitution and injunctive relief against Defendant, as set forth in the Prayer for Relief.

93. Plaintiff and members of the putative class have suffered injury in fact and have lost money or property as a result of Defendant's unfair competition, as more fully set forth herein. Plaintiff and members of the putative class have been injured because they overpaid for Resveratrol, since the value of the supplement was diminished at the time of sale. Plaintiff and members of the class of been injured because, had they been made aware that the product contained primarily Japanese knotweed and little "organic" resveratrol (or much less than consumers reasonably expect) from French Red-Wine Grapes, they would not have purchased the product, would have paid less for it, or purchased a different resveratrol supplement.

94. Defendant, through its acts of unfair competition, has unfairly acquired money from plaintiff and members of the putative class. It is impossible for the Plaintiff to determine the exact amount of money that Defendant has

Kazerouni Law Group, APC

obtained without a detailed review of the Defendant's books and records. Plaintiff requests that this Court restore this money and enjoin Defendant from continuing to violate California Business & Professions Code § 17200 et seq., as discussed above.

95. Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, fraudulent, untrue, and deceptive business acts and practices as described herein, consumers residing within California, will continue to be exposed to and damaged by Defendant's unfair competition.

96. Plaintiff also seeks an order requiring Defendant to undertake a public information campaign to inform members of the putative class of its prior acts or practices.

97. Plaintiff further seeks an order requiring Defendant to make full restitution of all moneys wrongfully obtained and disgorge all ill-gotten revenues and/or profits, together with interest thereupon.

98. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, California Civil Code section 1021.5.

## II. SECOND CAUSE OF ACTION FOR VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ. (California's False Advertising Law)

99. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if set forth fully herein.

100. Plaintiff brings this cause of action on behalf of herself and on behalf of the putative class.

101. The misrepresentations, acts and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore violates Business & Professions Code §§ 17500 et seq.

102. At all times relevant, Defendant's advertising and promotion regarding

Kazerouni Law Group, APC

Kazerouni Law Group, APC

Resveratrol was untrue, misleading and likely to deceive the public and/or has deceived the Plaintiff and California consumers similarly situated by representing that the product contained primarily organic "Resveratrol From French Red-Wine Grapes" when in fact defendant knew and failed to disclose that the product contain primarily Japanese knotweed, and little "organic" resveratrol (or much less than consumers reasonably expect based upon Defendant's representations alleged herein) from French Red-Wide Grapes. Furthermore, Defendant failed to disclosure the presence of magnesium stearate on its labeling and as part of its advertising and marketing.

103. State law claims based on a food products misleading and deceptive labels are expressly permitted when they impose legal obligations identical to those of the FFDCA and its implementing FDA regulations, including FDA regulations concerning naming and labeling. *See e.g.*, *In re Farm Raised Salmon Cases*, 22 Cal. 4th 1077, 1094-95 (2008).   Plaintiff § 17500 claim that the label of the Resveratrol product is false or misleading imposes legal obligations identical to 21 U.S.C. § 343(a) of the FFDCA, which states that, "a food shall be deemed to be misbranded…[i]f (1) its labeling is false or misleading in any particular[.]" Further, section 343(a) of the FFDCA is not subject to express preemption provision set forth in 21 U.S.C. § 343-1 of the FFDCA.

104. Defendant engaged in the false and/or misleading advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of Resveratrol.

105. In making and disseminating the statements and and/or omissions alleged herein, Defendant knew or should have known that the statements and and/or omissions were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500 et seq.

106. Plaintiff and members of the putative class have suffered injury in fact and have lost money or property as a result of Defendant's False Advertising, as more fully set forth herein. Plaintiff and members of the class have been injured because they overpaid for Resveratrol, since the value of the supplement was diminished at the time of sale. Plaintiff and members of the putative class have been injured because had they been made aware that the Resveratrol product contains primarily Japanese Knotweed and little "organic" resveratrol (or much less than consumers reasonably expect based upon Defendant's representations alleged herein) from French Red-Wine Grapes, and contained magnesium stearate, they would have not purchased the supplement, would have paid less for it, or would purchased a different resveratrol supplement.

107. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant has committed acts of untrue and misleading advertising and promotion of Resveratrol, as defined by Business & Professions Code §§ 17500 et seq., by engaging in the false advertising and promotion of Resveratrol as organic "Resveratrol From French Red-Wine Grapes," "Pro-longevity Factors Proprietary Blend 200 mg," and "Resveratrol 500 mg," along with prominently depicting red vine grapes and red vine grape leaves that occupy virtually the entirety of the picture part of the front label, with the claim "from the heart of France," "The Original Red Wine Antioxidant," as described above.

108. The fraudulent, unlawful and unfair business practices and false and misleading advertising of Defendant, as described above, presents a continuing threat to consumers in that they will continue to mislead consumers to purchase Resveratrol on false premises.

109. As a direct and proximate result of the aforementioned acts and representations of Defendant, Defendant received and continues to hold

Kazerouni Law Group, APC

monies rightfully belonging to Plaintiff and other similarly situated consumers who were led to purchase, purchase more of, or pay more for, the Resveratrol product, due to the unlawful acts of Defendant, during the Class Period.

## III. THIRD CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

110. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if fully stated herein.

111. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant represented to the public, including Plaintiff, by packaging and other means, that Resveratrol is organic "Resveratrol From French Red-Wine Grapes," "Pro-longevity Factors Proprietary Blend 200 mg," and "Resveratrol 500 mg," along with prominently depicting red vine grapes and red vine grape leaves that occupy virtually the entirety of the picture part of the front label, with the claim "from the heart of France," "The Original Red Wine Antioxidant."

112. Defendant's representations were untrue in that Resveratrol does not contain 500 or even 250 mg of "organic" resveratrol from red wine grapes grown in France, does not identify how much of the Pro-longevity Blend is resveratrol, and does not identify how much "organic" resveratrol is in each individual capsule.

113. Defendant also intentionally failed to disclose that the Resveratrol product contained magnesium stearate.

114. Defendant made the representations herein alleged with the intention of inducing the public, including Plaintiff, to purchase Resveratrol.

115. Plaintiff and other similarly situated persons in California saw, believed, and relied upon Defendant's advertising representations and, in reliance on them, purchased the products, as described above.

Kazerouni Law Group, APC

**CLASS ACTION COMPLAINT**

116. At all times relevant, Defendant made the misrepresentations herein alleged, Defendant had no reasonable grounds for believing the representations to be true.

117. As a proximate result of Defendant's negligent misrepresentations, Plaintiff and other consumers similarly situated were induced to purchase, purchase more of, or pay more for, the Resveratrol product, due to the unlawful acts of Defendant, in an amount to be determined at trial, during the Class Period.

## IV. FOURTH CAUSE OF ACTION
## FOR INTENTIONAL MISREPRESENTATION

118. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations.

119. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant intentionally represented to the public, including Plaintiff, by packaging an other means, such as organic "Resveratrol From French Red-Wine Grapes," "Pro-longevity Factors Proprietary Blend 200 mg," and "Resveratrol 500 mg," along with prominently depicting red vine grapes and red vine grape leaves that occupy virtually the entirety of the picture part of the front label, with the claim "from the heart of France," "The Original Red Wine Antioxidant."

120. Defendant's representations were untrue in that Resveratrol does not contain 500 mg or even 250 mg of "organic" resveratrol, does not identify how much of the "Pro-longevity Factors Proprietary Blend" is resveratrol, and does not identify exactly how much "organic" resveratrol is found in each capsule, and the Resveratrol product contains magnesium stearate which Defendant did not disclose as an ingredient.

121. Defendant made the representations herein alleged with the intention of

Kazerouni Law Group, APC

Kazerouni Law Group, APC

inducing the public, including Plaintiff, to purchase Resveratrol.

122. Plaintiff and other similarly situated persons in California saw, believed, and relied upon Defendant's advertising representations and, in reliance on them, purchased the products, as described above.

123. At all times relevant, Defendant made the misrepresentations herein alleged, Defendant knew the representations to be false.

124. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and other consumers similarly situated were induced to spend an amount of money to be determined at trial on Defendant's product Resveratrol.

125. Plaintiff is informed, and believes, and thereupon alleges, that Defendant knew that Resveratrol was not as healthy as promoted, as it does in fact not contain 500 mg or even 250 mg of "organic' resveratrol from red wine grapes grown in France. Defendant intended that consumers and the unknowing public should rely on such representations and other representations as alleged herein. Plaintiff and other consumers similarly situated, in purchasing and using the products as herein alleged, did rely on Defendant's representations, all to their damage and/or detriment, as herein alleged. By engaging in said acts, Defendant is guilty of malice, oppression, and fraud, and each Plaintiff is therefore entitled to recover exemplary or punitive damages.

## CLASS ACTION ALLEGATIONS

126. Plaintiff and the members of the Class have all suffered injury in fact as a result of the Defendant's unlawful and misleading conduct.

127. The "Class Period" means four years prior to filing of this action.

128. Plaintiff bring this lawsuit on behalf of herself and the other California consumers similarly situated under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.   Subject to additional information obtained

---

**CLASS ACTION COMPLAINT**

through further investigation and/or discovery, the proposed "Class" consists of:

> "All persons in California who purchased Resveratrol produced by Defendant within four years prior to the filing of this action."

Excluded from the Class are Defendant and any of its officers, directors, and employees, or anyone who purchased Resveratrol for the purposes of resale. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

129. ***Ascertainability.*** The members of the Class are readily ascertainable by resort to Defendant's records and/or Defendant's agent's records, including in-store and online sales, as well as through public notice.

130. ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains several thousands of members.

131. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the standardized marketing, advertisements and promotions. The common legal and factual questions include, but are not limited to, the following:

  (a)   Whether Resveratrol contains primarily Japanese Knotweed;

  (b)   Whether Resveratrol contains magnesium stearate, and in what quantity;

  (c)   Whether Reserveage Organics' claims alleged herein are

Kazerouni Law Group, APC

untrue, or are misleading, or reasonably likely to deceive;

(d)   Whether Defendant's conduct is an unlawful act or practice within the meaning of California Business & Professions Code § 17200;

(e)   Whether Defendant's conduct is a deceptive act or practice within the meaning of California Business & Professions Code § 17200;

(f)   Whether Defendant's conduct is an unfair act or practice within the meaning of California Business & Professions Code § 17200;

(g)   Whether Defendant's advertising is untrue or misleading with the meaning of California Business & Professions Code § 17500;

(h)   Whether Defendant's advertising is untrue or misleading in violation of California Civil Code § 110660;

(i)   Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

(j)   Whether Plaintiff and proposed members of the Class are entitled to equitable relief, including but not limited to restitution and/or disgorgement; and

(k)   Whether Plaintiff and proposed members of the Class are entitled to injunctive relief sought herein.

132. **_Typicality_**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, purchased Resveratrol after exposure to virtually the same material misrepresentations and/or omissions appearing on the product packaging, and on Defendant's

**CLASS ACTION COMPLAINT**

website, and received a product that contained little "organic" resveratrol from French Red-Wine Grapes (or much less than consumers reasonably expect from Defendant's representations), and which product contained magnesium stearate without disclosure of it presence by Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Class. Defendant has no defenses unique to the Plaintiff.

133. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experience in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interest to those in the Class, and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of the Plaintiff and proposed Class.

134. ***Superiority***. A class-action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and court system and the issues raised by this action. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford

Kazerouni Law Group, APC

Kazerouni Law Group, APC

such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

135. Unless a Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to advertise, market, promote and package Resveratrol in an unlawful and misleading manner, and members of the Class will continue to be misled and denied their rights under California law.

136. Further, Defendant has acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant, and Plaintiff and Class members be awarded damages from Defendant as follows:

a. Certifying the Class as requested herein;

b. A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing its Resveratrol as composed primarily of "organic resveratrol" from French Red-Wine Grapes; (ii) disclose how much "organic" resveratrol from French red vine grapes is in each capsule; (iii) disclose the presence of magnesium stearate, and how much magnesium stearate is in each capsule; (iv) undertake an

immediate public information campaign to inform members of the proposed class as to their prior practices; and (v) correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities and quantities of its Resveratrol product, including without limitation, the placement of corrective advertising and providing written notice to the public;

c. An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to the plaintiff and members of the class all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

d. Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery were necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e. Statutory prejudgment and post judgment interest;

f. Special, general, and compensatory damages to Plaintiff and Class members;

g. Costs of this suit;

h. Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

i. Awarding any and all other relief that this Court deems necessary or appropriate.

Dated: September 9, 2013              **KAZEROUNI LAW GROUP, APC**

BY: /S/ ABBAS KAZEROUNIAN

ABBAS KAZEROUNIAN, ESQ.
ATTORNEYS FOR PLAINTIFF

Kazerouni Law Group, APC

**CLASS ACTION COMPLAINT**

1

## Trial By Jury

2  137. Pursuant to the seventh amendment to the Constitution of the United States

3     of America, Plaintiff is entitled to, and demands, a trial by jury.

4  Dated: September 9, 2013        **KAZEROUNI LAW GROUP, APC**

5                    BY: /S/ ABBAS KAZEROUNIAN

6                       ABBAS KAZEROUNIAN, ESQ.
                        ATTORNEYS FOR PLAINTIFF

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kazerouni Law Group, APC

PROOF OF SERVICE